UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

PAUL JAMES CAVANAUGH,

                    Petitioner,

v.

WARDEN ELLIS,

                    Respondent.

Case No. 1:13-cv-00295-CWD

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Petitioner Paul James Cavanaugh's Petition for Writ of Habeas Corpus. (Dkt. 3.) Respondent has filed a Motion for Summary Dismissal, and Petitioner has filed a response. (Dkt. 15, 17.) Also pending is Petitioner's Motion for Leave of Court to Undertake Discovery. (Dkt. 9.)

The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on December 3, 2013. (Dkt. 14.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 12.) Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly,

**MEMORANDUM DECISION AND ORDER  1**

the Court enters the following Order denying Petitioner's Motion for Leave of Court to Undertake Discovery, granting Respondent's Motion for Summary Dismissal, and dismissing this case with prejudice.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *State v. Cavanaugh*, Docket No. 33657, Unpubl. Op. 349 (Idaho Ct. App. February 10, 2009), which is contained in the record at State's Lodging B-4.

Petitioner was charged in the First Judicial District Court of the State of Idaho, in Bonner County, with one count of vehicular manslaughter, in violation of Idaho Code § 18-4006, and one count of leaving the scene of an injury accident, in violation of Idaho Code § 18-8007. (State's Lodging B-4 at 1.)

The Idaho Court of Appeals summarized the evidence at Petitioner's trial as follows:

> On March 10, 2005, Sara Jones was struck by the driver of a pickup truck while walking along a dirt road at approximately 6:30 in the evening. She later died from her injuries. [Petitioner], who was the registered owner of the truck and who several minutes later emerged from the dark wooded area that the truck had swerved into after striking Jones, was charged with vehicular manslaughter and leaving the scene of an injury accident. . . .
>
> One witness who testified at [Petitioner's] trial saw the accident (though he could not see the driver inside the pickup) and was at the victim's side within seconds. Several other witnesses were on the scene within minutes, if not less than a minute. Testimony indicated that [Petitioner's] crashed truck

**MEMORANDUM DECISION AND ORDER  2**

came to a stop about twenty to twenty-five feet from the victim. Although it was dark, so that the surroundings could not be seen, one witness heard [Petitioner] emerge from the pickup and saw him come over to the location of the victim. Several other witnesses saw him later at the scene. None of these witnesses reported seeing anyone other than [Petitioner] come from the direction of the crashed truck or anyone fleeing from the scene. One witness said that, as she was tending to the victim, [Petitioner] came to her side and said, "I'm sorry, I didn't mean to. I didn't mean to. I didn't mean to."

This evidence that [Petitioner] was the driver who struck Sara Jones comports with his own statements. [Petitioner] called 911 the day after the accident to report his accident from the night before. In that recorded conversation, [Petitioner] clearly indicated he had been driving the truck. During that conversation, [Petitioner] said, "I was going down the road and, and I thought I seen some people in the road and it's like they jumped out in front of me or something and I swerved to miss them and I ended up in the trees." Similarly, [Petitioner] told the operator later in the conversation, "My brakes are kind of bad and I just swerved out of the way and next thing you know I found myself—I looked back and my truck was in the trees and I was trying to talk to these people to help them." When asked by the operator if he had been driving down the road towards Highway 41, [Petitioner] responded, "Yeah." The rest of the taped conversation is replete with additional statements by [Petitioner] indicating he was driving the truck that hit Jones, but contains not one statement, explicit or implicit, indicating that anyone else was in the truck either as a driver or passenger. That same day, in an interview by an officer, [Petitioner] specifically said that no one else was in the truck with him.

(State's Lodging B-4 at 1, 4-5.) A test of Petitioner's blood showed that his blood alcohol content was over the legal limit several hours after the accident. (State's Lodging A-2 at 294.)

**MEMORANDUM DECISION AND ORDER 3**

Petitioner's defense at trial was that he was not driving the truck when it hit Ms. Jones, but that he did not know who was. He testified that an alcohol-induced blackout prohibited him from remembering much of the evening, including the person driving him around in his truck, but that he specifically remembered being in the passenger seat of his truck earlier in the day. (*Id.* at 377-83.) Defense counsel stressed that the only blood inside the truck was found on the passenger side and that when officers arrived at the accident scene, the passenger side door was the only door that was open—and thus the door that Petitioner likely used to get out of the truck.[1] (*Id*. at 365.) Petitioner suspected that the driver might have been a woman named Charleen Coleman, because he knew she had driven his truck before, but he did not know. (*Id*. at 405.) On cross-examination, Petitioner acknowledged that he was able to remember certain other events that day, such as being bitten by his dog. (*Id*. at 391.)

In addition to presenting Petitioner's testimony, defense counsel pointed out numerous alleged errors committed by the officers investigating the scene of the accident. For example, several samples of blood and hair were found inside the truck but inadvertently were not sent to the laboratory to be tested. (*Id*. at 359-64.) Additionally, testimony revealed that the scene of the accident was not secured for some period of time, that witnesses were not specifically instructed to avoid touching any evidence, and that

---

[1] The prosecution countered that Petitioner's theory did not explain how the other mystery driver exited the truck and that Petitioner could have been thrown to the passenger side when the truck veered to the left after hitting the victim.

**MEMORANDUM DECISION AND ORDER  4**

there was "no attempt to preserve the skid marks" left by the truck. (*Id*. at 298-302, 364.)

The jury found Petitioner guilty. Petitioner was sentenced to a unified sentence of 15 years' imprisonment with 8 years fixed for the vehicular manslaughter conviction, and a fixed concurrent sentence of 5 years for the leaving the scene conviction. (State's Lodging A-1 at 93-96.)

Petitioner did not timely file a direct appeal, but he did file a motion for a new trial, arguing (1) that newly discovered evidence showed he was innocent of the crime, and (2) his counsel rendered ineffective assistance in violation of the Sixth Amendment. (*Id.* at 104-24.) In support of his motion for a new trial, Petitioner alleged that Charleen Coleman, "a witness (who refused to talk to police or come forward to testify at [Petitioner's] trial), . . . allegedly saw a woman driving [Petitioner's] pickup with [Petitioner] as a passenger, perhaps near the time of the accident that killed Sara Jones." (State's Lodging B-4 at 4; *see also* State's Lodging C-1 at 115-22.) Petitioner claimed that this evidence established his innocence.

The trial court denied the motion, addressing only Petitioner's ineffectiveness claim and noting that ineffective assistance is not a basis for a new trial under Idaho law. (State's Lodging A-1 at 193-94.) Petitioner appealed the denial of his motion for a new trial, arguing that the district court should have considered Petitioner's newly discovered evidence of innocence and that such evidence would likely lead to an acquittal. (State's Lodging B-1.)

**MEMORANDUM DECISION AND ORDER  5**

The Idaho Court of Appeals affirmed the district court. The court considered Petitioner's newly discovered evidence and held that, "[e]ven assuming [Petitioner] could produce [Charleen Coleman] and compel such testimony, such evidence would not be likely to produce an acquittal because it could not overcome the strength of the State's case against [Petitioner]." (State's Lodging B-4 at 4.) The Idaho Supreme Court denied review.[2] (State's Lodging B-7.)

Petitioner next filed a petition for postconviction relief in the state trial court, asserting ineffective assistance of counsel on numerous grounds, including that trial counsel failed to file a direct appeal after informing Petitioner they would do so. (State's Lodging C-1 at 26-102; *id.* at 55-56.) Petitioner also sought DNA testing, under Idaho Code § 19-4902(b), of the blood found in the passenger side of the truck. (*Id.* at 57-59.) The trial court granted the petition with respect to the claim of ineffective assistance for failure to file a direct appeal. (State's Lodging C-2 at 325-28.) Petitioner was given the opportunity to file a direct appeal, which he did.

The state district court dismissed the remaining ineffective assistance claims in Petitioner's postconviction petition because Petitioner had "failed to show that his trial counsel were ineffective before trial, during trial, and/or at sentencing, and that there is a

---

[2] While Petitioner's appeal of the denial of his motion for a new trial was pending, Petitioner filed a second motion for a new trial, alleging again that newly discovered evidence supported his claim of innocence. (State's Lodging D-1 at 4-52.) The trial court denied the motion, noting that Petitioner's own trial investigator testified that Petitioner's allegations were not supported by the information the investigator had gathered. (*Id*. at 77-78.) There is no indication in the record that Petitioner appealed this decision. (*See id.* at 3, 94-96.)

reasonable probability that but for the conduct of his counsel, the outcome of the trial would have been different." (*Id*. at 332.) The court did not discuss Petitioner's request for DNA testing, a point which Petitioner raised in a motion to alter or amend the judgment. (*Id*. at 341.) The trial court denied the motion, stating that Petitioner had "not shown any legal or factual error" in the initial decision. (*Id*. at 345.)

On direct appeal, Petitioner argued that (1) the prosecutor engaged in misconduct by making inappropriate and inflammatory comments during closing arguments, and (2) Petitioner's sentence was excessive. (State's Lodging E-1.) The Idaho Court of Appeals affirmed, holding that although the prosecutor committed error, that error was harmless beyond a reasonable doubt "given the strength of the state's case" against Petitioner. (State's Lodging E-4.) Petitioner filed a petition for review, which was denied by the Idaho Supreme Court. (State's Lodging E-5, E-6.)

Petitioner also appealed the partial denial of his postconviction petition, raising a single issue: whether Petitioner's counsel rendered ineffective assistance by failing to exercise a peremptory challenge to exclude an allegedly biased juror. (State's Lodging F-1.) Petitioner, unhappy with the opening brief filed by postconviction appellate counsel, moved to intervene. (State's Lodging F-2.) He claimed that counsel's appellate brief "contained disparagements of the ineffective assistance of counsel issue," and he argued that appellate counsel should have included other arguments in the briefing. (*Id*. at 2.) He did not, however, identify any such arguments. The motion to intervene was denied

without discussion. (State's Lodging F-3.)

The Idaho Court of Appeals affirmed the trial court's dismissal of Petitioner's ineffectiveness claim related to the allegedly biased juror, holding that even if counsel had performed deficiently, Petitioner could not show that he was prejudiced by the failure to strike the juror. (State's Lodging F-8 at 6-8.) Petitioner filed a pro se petition for review, complaining that counsel had raised only one issue in the appellate briefing. (State's Lodging F-9, F-10 at 5.) Petitioner's counsel also filed a petition for review. (State's Lodging F-11.) The Idaho Supreme Court denied both petitions. (State's Lodging F-13.)

Petitioner then filed the instant federal Petition. He raises two claims. Claim One asserts that Petitioner is actually innocent of the crimes of which he was convicted. (Pet., Dkt. 3, at 6; Dkt. 3-1 at 1 through Dkt. 3-2 at 22.) Petitioner states that he has now remembered the identity of the driver of his truck--a woman named Lesha Hegel. Petitioner's wife allegedly told him she had heard Charleen Coleman state that Charleen had seen Hegel driving Petitioner's truck on the day of the accident. According to Petitioner, his wife's statements triggered Plaintiff's memory that Hegel was driving his truck while Petitioner was in the passenger seat.

Claim Two asserts ineffective assistance of trial counsel based on various grounds, none of which is counsel's failure to strike the allegedly biased juror—the claim raised on appeal from the denial of Petitioner's postconviction petition. (Pet., Dkt. 3-2 at 23

through 3-3 at 32.)

## DISCUSSION

**1.     Standard of Law Governing Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases ("Habeas Rules") authorizes the

Court to summarily dismiss a petition for writ of habeas corpus or claims contained in the

petition when "it plainly appears from the face of the petition and any attached exhibits

that the petitioner is not entitled to relief in the district court." In such case, the Court

construes the facts in the light most favorable to the petitioner.

**2.     Claim One, Actual Innocence, Is Not Cognizable in this Federal Habeas Case**

In Claim One, Petitioner alleges that he is actually innocent. However, in a

noncapital case, a claim of actual innocence is not cognizable on collateral review in a

federal habeas corpus action. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993).

Therefore, Claim One does not constitute an independent ground for relief, and the

Court will dismiss that claim. However, although actual innocence is "not itself a

constitutional claim," it can be used as "a gateway through which a habeas petitioner

[may] pass to have his otherwise barred constitutional claim considered on the merits." *Id.*

The Court will discuss this aspect of Petitioner's actual innocence claim in Section 4,

below.

### 3. Claim Two, Ineffective Assistance of Counsel, Is Procedurally Defaulted

#### A. *Standard of Law Governing Procedural Default*

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847.

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim, "regardless of whether the petitioner [is] proceeding pro se." *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001) (emphasis omitted).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To be an "adequate" state ground, a state court's procedural bar must be one that is "'clear, consistently applied, and well-established' at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on federal grounds and is not intertwined with federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

## B. *Analysis of Procedural Default as to Claim Two*

Because Claim One is non-cognizable, the Court will address procedural default only with respect to Claim Two—ineffective assistance of counsel—including all of Claim Two's sub-claims. The simplest manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were

raised and addressed in the state court appellate proceedings.

On appeal from the denial of Petitioner's motion for a new trial, Petitioner argued only that the district court should have addressed his newly-discovered evidence claim and that the evidence showed Petitioner was actually innocent. (State's Lodging B-1.) On direct appeal, Petitioner argued that the prosecutor committed misconduct and that his sentence was excessive. (State's Lodging E-1.) On appeal from the dismissal of his postconviction petition, Petitioner's counsel raised only one issue: whether trial counsel was ineffective for failing to strike an allegedly biased juror.[3] (State's Lodging F-1.) Other than Petitioner's actual innocence claim—which is not cognizable in this habeas action—none of the claims included in Petitioner's federal habeas Petition were raised on appeal to the Idaho courts. (*See* Dkt. 3.)

Petitioner argues that all of his ineffective assistance claims were, in fact, raised in state court. He states that his postconviction petition "presented the bulk of documentation of showing failures of counsel," and that even though appellate counsel raised only one claim on appeal, "[t]hese other issues were most likely reviewed" by the court of appeals. (Dkt. 17 at 13, 15.) The basis for Petitioner's contention is the unremarkable proposition that Idaho appellate courts "apply the same standards utilized by the trial courts" when reviewing a motion for summary dismissal of a postconviction

---

[3] Although Petitioner's motion to intervene and his petition for review, both filed pro se, complained of postconviction appellate counsel's brief and stated that counsel should have made other arguments, Petitioner did not discuss any of those other arguments. Therefore, it cannot be said that Petitioner's pro se filings "explicitly" raised any other claims. *Lyons*, 232 F.3d at 669.

**MEMORANDUM DECISION AND ORDER  12**

petition," as well as the Idaho Supreme Court's statement that it denied Petitioner's petition for review "after due consideration." (*Id.* at 15.) Though Petitioner may be correct that "the highest [state] court had [the] *opportunity* to review the documents in question . . . on the claim of ineffective assistance of counsel" (*id.*) (emphasis added), such an opportunity does not constitute fair presentation of his federal claims to the state courts. Rather, "[t]o exhaust his claim, [a petitioner] must have presented his federal, constitutional issue before the [state appellate courts] within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005). The only ineffectiveness claim raised by that briefing was based on trial counsel's failure to strike a juror—which is not included as a claim in Petitioner's federal habeas corpus petition.

Therefore, all of Petitioner's Claim Two sub-claims are procedurally defaulted. But that conclusion does not end the inquiry. If a claim is procedurally defaulted, a federal court can still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, *see Coleman*, 501 U.S. at 731, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

**4.     Petitioner Has Not Shown That a Miscarriage of Justice Will Occur If His Claims Are Not Heard on the Merits or That Good Cause Exists to Allow Discovery**

    **A.     *Standards of Law***

Petitioner does not argue that cause and prejudice exist to excuse the procedural default of Claim Two, either under the traditional *Coleman* cause and prejudice inquiry or the more recent cause and prejudice analysis set forth in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (*See* Dkt. 17.) Therefore, the Court may reach the merits of Claim Two, including its sub-claims, only if Petitioner demonstrates actual innocence.

Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

This is an extremely demanding standard, and "tenable actual-innocence gateway

pleas are rare." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

Petitioner has filed a Motion for Leave To Undertake Discovery to gather information that might support his claim of innocence. A habeas petitioner, unlike a traditional civil litigant, is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, the petitioner must first seek leave of court, and leave will be granted only upon a showing of good cause. *See* Rule 6(a) of the Habeas Rules. Good cause exists when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that [the petitioner] is entitled to relief." *Bracy*, 520 U.S. at 908-09 (internal quotation marks and alteration omitted). Whether discovery is granted is within the Court's discretion, and discovery will be allowed when it is "essential for the habeas petitioner to develop fully his underlying claim." *Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir. 2010) (internal

quotation marks omitted). Discovery is unwarranted when "reference to the state court record" is sufficient to determine the issues. *Id.* (internal quotation marks omitted).

Further, Rule 6 must be read in conjunction with the United States Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011), which held that federal habeas review of claims on the merits is limited to the record that was before the state court. Because Petitioner seeks discovery in an attempt to avoid a procedural bar, rather than seeking discovery on the merits, *Pinholster* does not prohibit this Court from considering whether to grant discovery.

**B.      *Petitioner Has Not Established That He Is Actually Innocent or That Good Cause Exists for Discovery***

i.      Plaintiff's current evidence does not establish innocence

Petitioner has submitted to the Court several documents that, he contends, establish his innocence for purposes of a procedural default analysis. Some of these documents are statements made by Petitioner's wife, Carolyn Adams.[4] Ms. Adams states that another person, Charleen Coleman, told her that Charleen had seen Lesha Hegel driving Petitioner to the doctor on the day of the accident—likely to obtain treatment of Petitioner's dog bite wound.[5] (Att. to Pet., Claim One Keynotes 1, 4.) Petitioner claims that his wife also informed him that another woman, Tracy Anderson, had heard Charleen

---

[4] Ms. Adams has suffered a stroke and has difficulty writing. Therefore, her statements were written out by her granddaughter and by Petitioner for Ms. Adams's signature.

[5] Petitioner also submitted his own affidavits repeating these statements by Ms. Adams. (Att. to Pet., Claim One Keynote 1.)

**MEMORANDUM DECISION AND ORDER  16**

talking about seeing Lesha Hegel driving Petitioner's truck on the day of the accident and was "agreeing with everything [Charleen] was saying." (Att. to Pet., Dkt. 3-1, Claim One Keynote 4.) In an 2006 statement, Ms. Adams clarified that Charleen had said Hegel was driving "when the accident happened." (Att. to Pet., Dkt. 3, Claim One Keynote 4.) It also appears that Petitioner's post-trial investigator was informed by a woman named Pam Stewart, a friend of Petitioner's wife, that Pam had overheard Charleen tell this story to Ms. Adams. (Att. to Pet., Dkt. 3-1, Claim One Keynote 4.)

Also attached to the Petition is a statement by Coleman Hamilton, who allegedly learned from Charleen's sister, Nicky, that Petitioner was passed out on the passenger's side of his truck on the day of the accident, though there is no allegation as to the time this may have occurred. It appears Hamilton believed that Nicky heard about Petitioner's alleged passing out from Charleen. (Att. to Pet., Dkt. 3, Claim One Keynote 1.)

Ms. Adams also states that a man named "George," later identified as George Donohoo, told her he had seen Hegel and Petitioner at a bar earlier in the evening on the date of the accident. (Att. to Pet., Dkt. 3, Claim One Keynote 4.) Petitioner states that after he was arrested and jailed, he heard two inmates talking about a man named George, whom Petitioner later determined to be the very same George who had spoken to his wife. One of the inmates then told Petitioner that "George knew the woman who was driving and said this woman would not let [Petitioner] drive because [Petitioner] was too drunk." (Att. to Pet., Dkt. 3-1, Claim One Keynote 4.) George also supposedly told the inmate that

Hegel had been injured during the accident. The inmate told Petitioner he believed that George was protecting Hegel from prosecution. (*Id*.)

These statements all contain at least one level of hearsay, and some contain double hearsay. Petitioner has offered nothing from Charleen Coleman, George Donohoo, or Lesha Hegel to support his underlying claim that Hegel was driving the truck when Sara Jones was killed. And though evidence need not be admissible to support an actual innocence gateway claim, it is not only the hearsay nature of these statements that detract from their potential to persuade.

The Court also finds that the credibility and reliability of Petitioner's "evidence" that Hegel was driving is highly suspect. It is close to preposterous that Petitioner, who consistently claimed lack of memory of most of the events leading up to the accident, suddenly remembered Hegel after his wife identified her as a person who—according to yet another person—was actually driving the truck. Petitioner himself informed police officers after the accident that *he* had been driving his truck, that *he* might have hit somebody, and that *no one else* was with him in the truck. Although Petitioner attempts to blame this confession on "inferential errors" that he made without knowing all of the relevant facts, it is inconceivable that Petitioner's memory has actually gotten *better* in the years since Ms. Jones was killed. The belated revelation of Petitioner's allegedly repressed memory undermines the reliability of that memory as well as Petitioner's credibility. *See McQuiggin*, 133 S. Ct. at 1935; *Schlup*, 513 U.S. at 332.

**MEMORANDUM DECISION AND ORDER  18**

Moreover, the witness statements that supposedly establish Petitioner's innocence are not credible given that they are offered by people with a clear motive to lie: Petitioner himself, Petitioner's wife, and Petitioner's friends. This is particularly so when the victim's boyfriend and the other eyewitnesses at the scene of the accident—who identified Petitioner as the only person in the vicinity of the truck and who heard Petitioner take responsibility for hitting Ms. Jones—had no such motive.

Finally, Petitioner's evidence, even if credible, would not establish actual innocence. As the Idaho Court of Appeals explained:

> [Petitioner's] defense at trial was that he was merely a passenger in his truck that struck the victim. Although there was no testimony that anyone had actually seen him driving at the time, the State presented extensive circumstantial evidence that [Petitioner], the registered owner of the vehicle, was culpable. . . . [S]uch evidence carries the same weight as direct evidence. The victim's boyfriend, who witnessed the incident, identified [Petitioner] as the only person he saw emerging from the truck after it struck the victim and swerved off the road. The witness also observed that when [Petitioner] approached the scene, [Petitioner] was acting intoxicated and smelled of alcohol. In addition, the witness testified that when he told [Petitioner] that [Petitioner] had killed his girlfriend, [Petitioner] responded: "I know. I will die with her." The witness's foster mother, who came upon the scene shortly after the incident, also identified [Petitioner] as having been on the scene and saying, "I'm sorry" and "I didn't mean to." She testified [Petitioner] smelled heavily of alcohol and was acting intoxicated. Two other witnesses who arrived on the scene shortly after the incident also identified [Petitioner] as having been there, smelling of alcohol, and acting intoxicated. Additionally, an officer testified that when questioned by a police officer several hours after the incident, [Petitioner] told the officer "he may have hit somebody" and no one else had

been in the vehicle with him at the time. The officer observed that [Petitioner] appeared to be intoxicated. In a call to dispatch on the night of the incident, the tape of which was played for the jury, [Petitioner] stated he thought he may have hit someone.

[Petitioner's] evidence to rebut the State's case included his testimony that, although he remembered very little from the time before and after the incident due to his consumption of a large amount of alcohol earlier in the day, he had a vivid memory of being in the passenger seat of the truck at some point. It is questionable whether [Petitioner's] testimony would have very much persuasive value, if any, given his claim that he could remember very little about the hours surrounding the incident, that he could not identify who would have been driving his vehicle at the time, and his testimony that he had been at the scene and he had been drinking heavily that day. He also argued that his assertion that he was not driving was supported by evidence that only the passenger side door of the truck was open when it was approached by officers after the incident, he only had wounds on the right side of his head, and the only blood inside the truck cabin was on the passenger side. The State rebutted this evidence, arguing it did not explain how the alleged other driver exited and that [Petitioner] just as easily could have exited from the passenger side given that he was likely thrown in that direction when the truck violently veered to the left after hitting the victim.

In sum, it was [Petitioner's] truck that struck the victim . . . . [Petitioner] essentially admitted to having struck the victim to several people at the scene, never mentioning that someone else was driving, and went so far as to state he "may" have been the driver to both dispatch and an officer several hours later. He also told the officer unequivocally that he had been the only one in the vehicle at the time. He presented no plausible evidence at trial as to who could have been driving his truck, if not him, but merely asserted he had an isolated memory of being in the passenger seat. In the face of this evidence, including that of several witnesses who

> substantiated each other's testimony, there is no reasonable probability that a juror who may have been more likely to credit one certain witness's testimony would have changed the outcome. In addition, [the juror] specifically stated when questioned that he would be able to assess the case impartially. Given these factors, we conclude, even assuming counsel performed deficiently by failing to strike [the juror] from the jury pool, [Petitioner] has not shown there is a reasonable probability that, but for the deficient performance, the outcome of the trial would have been different.

(State's Lodging F-8 at 6-8) (footnotes omitted).

None of Petitioner's submissions—alone or in combination—comes close to rebutting this evidence, and it is certainly not the case that, more likely than not, every reasonable juror hearing all of the evidence would vote to acquit. Petitioner's current evidence does not establish actual innocence so as to allow the Court to reach the merits of Petitioner's claims of ineffective assistance of trial counsel.

ii.    Petitioner has not shown good cause for discovery

In addition to submitting his own evidence, Petitioner contends that discovery might uncover additional information that would establish his innocence. He seeks two types of evidence in his request for discovery. First, Petitioner seeks documents related to a Bonner County Deputy Sheriff's report of the accident. That report identifies "Lesha Kim Hegel" as a person who was "mentioned" the day after the accident as being "involved." (Att. to Pet., Claim Two Keynote 1.) There is no other information in the report about Hegel, and the person who "mentioned" her name to the sheriff's deputy is not identified. Petitioner seeks access to any "underlying documents" supporting the

report referring to Hegel's "involvement."

But there is nothing in the record to support Petitioner's speculation that any such underlying documents exist. In fact, documents submitted by Petitioner himself show that any further discovery based on the deputy's report would be futile. Petitioner, through requests for public records, already has sought any and all information in the custody of the Bonner County Sheriff's Office relating to Hegel's "involvement" as noted in the report. (See Dkt. 9-1 at 19, 22, 23.) The records custodian with the Bonner County Sheriff's Office has searched the departmental records twice and has found "no records on file" for Hegel (other than documents relating to an investigation of Hegel three years after the accident, which Petitioner has already received). (*Id*. at 21.) Petitioner has not shown good cause for discovery because the records he seeks do not exist.

The second type of information which Petitioner contends could prove his innocence is DNA testing of the blood samples found in the truck after the accident. (Dkt. 9-1 at 18, 20.) Petitioner has already received from the state two Forensic Services Evidence Submission/Receipt Forms. These forms appear to show that 8 samples of blood, hair, fibers, and an unknown substance were supposed to be sent to the forensics lab for testing after the accident. (Att. to Pet., Claim Two Keynote 8.) As the defense brought out at trial, none of this evidence was actually sent to be tested. (State's Lodging A-2 at 359-64.) Petitioner now claims that the blood is Hegel's and that, if the blood is tested, it will show that Hegel was driving.

However, Petitioner has not established good cause for discovery with respect to the blood evidence because, even assuming that the blood is Hegel's, Petitioner would still be unable to demonstrate that he is entitled to relief. *See Bracy*, 520 U.S. at 908-09. Hegel's blood in the truck would not necessarily mean that she was driving; rather, it would establish only that she had been inside the truck at an unknown point in time. The only blood found in the truck was on the passenger side, which could suggest that if Hegel had been in the truck, she was a passenger. This is the same inference the defense asked the jury to make at trial with respect to Petitioner—that the blood on the passenger side supported Petitioner's claim that he was not driving. Thus, the physical evidence supporting either Petitioner or Hegel as the driver, construed in the light most favorable to the Petitioner, is in equipoise. No matter whose blood was found in the truck, that blood cannot establish who was driving.

Thus, the Court looks to the other evidence in the record. And when any potential blood evidence is weighed against all of the overwhelming evidence that Petitioner was the driver—including (1) Petitioner's own confession to police officers that he was driving and thought he hit someone with his truck, (2) his statements accepting responsibility for the accident while he was at the scene, and (3) the fact that no witness saw anyone other than Petitioner in the vicinity of the truck after it crashed—any suggestion that the verdict could have been different is simply implausible. Discovery is not warranted in this case because "reference to the state court record" shows without

doubt that Petitioner is not entitled to habeas relief. *Smith*, 611 F.3d at 997. Even if the blood from the truck is Hegel's, and even if Petitioner, Ms. Adams, Ms. Stewart, and Mr. Hamilton are all telling the truth about the statements they heard from other individuals about Hegel's potential involvement, a reasonable juror could still conclude that Petitioner is guilty. Therefore, Petitioner is not entitled to discovery.

## CONCLUSION

Claim One is not cognizable in this federal habeas proceeding, and Claim Two is procedurally defaulted. Petitioner has not argued cause and prejudice for the default, nor has he established actual innocence to avoid that default. Therefore, Respondent's Motion for Summary Dismissal will be granted and this case dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1.     Petitioner's Motion for Leave of Court to Undertake Discovery (Dkt. 9) is

       DENIED.

2.     Respondent's Motion for Summary Dismissal (Dkt. 15) is GRANTED, and

       this entire action is DISMISSED with prejudice.

3.     The Court does not find its resolution of this habeas matter to be reasonably

       debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

       § 2253(c); Rule 11 of the Habeas Rules. If Petitioner files a timely notice of

       appeal, the Clerk of Court shall forward a copy of the notice of appeal,

**MEMORANDUM DECISION AND ORDER  24**

together with this Order, to the United States Court of Appeals for the Ninth

Circuit. Petitioner may seek a certificate of appealability from the Ninth

Circuit by filing a request in that court.

DATED: **May 28, 2014**

Honorable Candy W. Dale
United States Magistrate Judge